# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GEORGE JOHNSON, *et al.* <br> v. <br> KESTREL ENGINEERING, INC. | 2:15-cv-02575-EAS-EPD |

**SETTLEMENT AGREEMENT AND RELEASE**

Plaintiff (as defined below) and Defendant (as defined below) STIPULATE and AGREE as follows:

1. **Definitions.** The following terms will have the following meanings:

**"Action"** means the above-captioned lawsuit.

**"Agreement"** means this "Settlement Agreement and Release."

**"Approval Date"** means the date on which the Court enters an order approving the Settlement as fair, reasonable, and adequate and dismissing the Action with prejudice, with costs and attorneys' fees to be borne by the Party incurring the same.

**"Approval Motion"** means the motion to be filed by Plaintiff's Counsel attaching a copy of the Agreement and requesting that the Court enter an order approving the Settlement as fair, reasonable, and adequate and dismissing the Action with prejudice, with costs and attorneys' fees to be borne by the Party incurring the same.

**"Court"** means the United States District Court for the Southern District of Ohio.

**"Defendant"** means Kestrel Engineering, Inc.

**"Defense Counsel"** means Fiddler & Associates, P.C.

**"Parties"** refers jointly to Plaintiff and Defendant.

**"Payout Amount"** means $14,104.38 for Plaintiff.[1]

**"Plaintiff"** means George Johnson.

**"Plaintiff's Counsel"** means Winebrake & Santillo, LLC and Barkan Meizlish, LLP.

**"Released Parties"** means Defendant and any of its owners, governing persons, parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or other persons or entities acting on Defendant's behalf.

**"Settlement"** means the terms and conditions described in this Agreement.

**2. Maximum Settlement Amount.** Defendant's total payment under this Settlement will not under any circumstances exceed $28,208.76 plus any employer-side payroll taxes and withholdings (such as, for example, the employer's share of FICA) associated with the Payout Amounts.

**3. Condition Precedent.** This Settlement is conditioned on passage of the Approval Date.

**4. Release.** Within fourteen (14) days of Plaintiff's execution of this Agreement, Plaintiff will cause his attorneys to file an Approval Motion, with language agreed to by the Parties. Upon passage of the Approval Date and Defendant's fulfillment of its payment obligations under paragraphs 6 and 8, Plaintiff (on behalf of himself and his heirs, spouses, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable claims arising prior to the date Plaintiff executes the Agreement and alleging unpaid wages or overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law

1 This Payout Amount will be enhanced *pro rata* if: the Court disapproves any portion of Plaintiff's Counsel's requested attorney's fees or expenses as described in paragraph 8.

theory, including, but not limited to, any and all negligence and tort claims, contract claims, promissory estoppel claims, intentional infliction of emotional distress claims, defamation claims, wrongful discharge claims, claims for wages, qui tam claims, claims for benefits, and claims arising pursuant to any law, statute, ordinance, rule, or regulation including, but not limited to, the Federal False Claims Act, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. Section 1981, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, as amended, ("ADEA"), the Older Workers Benefit Protection Act, the Texas Commission on Human Rights Act, as amended ("TCHRA"), the Texas Minimum Wage Act, the Texas Whistleblowers Act, the Texas Worker's' Compensation Act (including retaliation and other claims under Chapter 451 of the Texas Labor Code (formerly Article 8307c of the Texas Workers' Compensation Act), the Texas Labor Code, the Texas Health and Safety Code, the Rehabilitation Act, the Employee Retirement Income Security Act ("ERISA"), the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Family and Medical Leave Act ("FMLA"). This release includes all claims that were asserted in or are reasonably related to the Action, including, but not limited to, any claims for unpaid overtime, liquidated damages, costs, and attorneys' fees pursuant to the FLSA.

5. **OWBPA.** This Agreement is intended to satisfy the requirements of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f). Plaintiff is advised to consult with his attorney before executing this Agreement. Plaintiff acknowledges and agrees that (a) Plaintiff has read and understands the terms of this Agreement; (b) by signing this Agreement, Plaintiff acknowledges that he does so freely, knowingly, and voluntarily (c) Plaintiff is not releasing any claims that may arise after the date of this Agreement; (d) Plaintiff is waiving his rights or claims in exchange for consideration in addition to anything of value to which Plaintiff is already

entitled; and (e) Plaintiff has been given twenty-one (21) days to consider this Agreement or has chosen to waive that period of time to review and consider this Agreement. Plaintiff is waiving any and all rights or claims which Plaintiff may have for age discrimination under the Age Discrimination in Employment Act and/or the Older Workers Benefit Protection Act or the Texas Commission on Human Rights Act. Plaintiff shall have seven (7) days after signing this Agreement during which time Plaintiff may revoke this Agreement (the "Revocation Period") in writing if the writing is received by Defendant's attorney, G. Scott Fiddler, at Fiddler & Associates, P.C., 1004 Congress, 3rd Floor, Houston, Texas 77002, fax number, 713-228-0078, before the expiration of the Revocation Period. This Agreement will not become effective (the "Effective Date") until the Revocation Period expires, during which time Plaintiff has not revoked this Agreement in writing received by Defendant's attorney, G. Scott Fiddler, at Fiddler & Associates, P.C., 1004 Congress, 3rd Floor, Houston, Texas 77002, fax number, 713-228-0078, before the expiration of the Revocation Period.

**6. Payment to Plaintiff.** Within fourteen (14) days of the Approval Date, Defendant will issue to Plaintiff who has signed this Agreement and returned a completed IRS W-4 Form a payroll check in the gross amount of $14,104.38, from which Defendant will withhold all applicable federal, state, and local taxes and withholdings ordinarily borne by employees pursuant to Defendant's ordinary payroll practices. Defendant will promptly deliver this payroll check to Plaintiff's Counsel for distribution to Plaintiff. Defendant also will issue to Plaintiff an IRS W-2 Form reflecting his Payout Amount. This IRS W-2 Forms will be mailed directly from Defendant to Plaintiff at the address listed on his W-4 Form. If the payroll check remains uncashed 120 days after the Approval Date, Defendant may issue a stop payment on the check and retain all associated funds and need not mail a W-2 Form to Plaintiff. Defendant and

its agents and attorneys make no representations or warranties as to the tax treatment of this Payout Amount by any taxing authorities. Plaintiff agrees to indemnify and hold harmless Released Parties for any taxes, penalties, and interest that may be assessed against Released Parties attributable to the Payout Amount for any taxes owed by Plaintiff.

**7. No Re-employment.** As part of this Agreement and as further consideration connected herewith, Plaintiff agrees that he is relinquishing, releasing, and/or waiving any and all employment rights or opportunities with Defendant and/or Released Parties and that he will not apply for or accept employment with them in the future. This paragraph applies to all business operations and locations of Released Parties, and to all positions with Released Parties.

**8. Payment of Plaintiff's Counsel's Fees and Expenses.** Plaintiff's Counsel will seek (and Defendant will not oppose) Court approval of fees and expenses associated with the settlement of Plaintiff's claims of $14,104.38. This amount is addition to the Payout Amount to Plaintiff described in paragraph 6. The Settlement is ***not*** contingent upon the Court's approval of this amount. Within seven (7) days of the Approval Date, Plaintiff's Counsel will email or fax a completed Form W-9 to Defendant's Counsel. Within fourteen (14) days of the Approval Date, Defendant will mail to Plaintiff's Counsel a non-payroll check made payable to Winebrake & Santillo, LLC and equaling any Court-approved fees and expenses. Defendant will issue to Winebrake & Santillo, LLC an IRS 1099 Form reflecting this payment. Plaintiff's Counsel is solely responsible for the payment of any taxes associated with this payment.

**9. Confidentiality.** Plaintiff will not communicate or disclose the terms of this Agreement, or the circumstances leading up to this Agreement, to any persons other than his spouse, significant other, immediate family member, attorney, accountant and/or tax consultant, or as otherwise required by law. Nothing in this paragraph is intended to prohibit Plaintiff from

disclosing that this matter has been resolved without making reference to the terms of this Agreement. Subject to the foregoing, Plaintiff may disclose the fact that the Action "has ended" or "is over" and that he "may not discuss the matter further." Plaintiff represents that as of the signing of the Agreement, he has not disclosed to anyone other than his spouse, significant other, immediate family member, attorney, accountant and/or tax consultant the existence of the Agreement, the amount of the Payout Amount and the other terms of this Agreement, the circumstances giving rise to the execution of the Agreement, and the negotiations leading to the Agreement. Plaintiff agrees that if a court of appropriate jurisdiction determines that he has breached this confidentiality clause, he will be liable to Defendant for up to $2,500.00 under this Agreement as liquidated damages.

**10. Entire Agreement.** This Agreement embodies the entire agreement between the Parties and controls over any prior communications. In entering into the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

**11. Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' heirs and successors.

**12. No Admissions.** Nothing in this Agreement constitutes an admission or suggestion of liability by any Party. Defendant denies any wrongdoing and continues to assert that, absent this Settlement, they ultimately would prevail in the Action. The Parties agree there are bona fide factual disputes regarding liability, the amount of hours worked, and the amount of wages owed, if any, which may be due Plaintiff.

**13. Court Approval Not Obtained.** If the Court does not approve the Settlement, the Parties' litigation positions will return to the *status quo ante* and, for example, Defendant will not have waived, compromised, or impacted any objections or defenses to Plaintiffs' claims or

the propriety of collective litigation.

**14. Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

**15. Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

**16. Applicable Law.** This Agreement is governed and construed pursuant to Ohio law.

**17. Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approval by the Court.

**18. Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

George Johnson [signature] — 8-9-2016

George Johnson — Date

______________________ — ____________

For Kestrel Engineering, Inc. — Date

______________________

Title

the propriety of collective litigation.

**14. Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

**15. Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

**16. Applicable Law.** This Agreement is governed and construed pursuant to Ohio law.

**17. Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approval by the Court.

**18. Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

______________________________ ______________
George Johnson Date

______________________________ 8-10-16
For Kestrel Engineering, Inc. Date

PRESIDENT
Title

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GEORGE JOHNSON, *et al.* v. KESTREL ENGINEERING, INC. | 2:15-cv-02575-EAS-EPD |

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiff (as defined below) and Defendant (as defined below) STIPULATE and AGREE as follows:

**1. Definitions.** The following terms will have the following meanings:

**"Action"** means the above-captioned lawsuit.

**"Agreement"** means this "Settlement Agreement and Release."

**"Approval Date"** means the date on which the Court enters an order approving the Settlement as fair, reasonable, and adequate and dismissing the Action with prejudice, with costs and attorneys' fees to be borne by the Party incurring the same.

**"Approval Motion"** means the motion to be filed by Plaintiff's Counsel attaching a copy of the Agreement and requesting that the Court enter an order approving the Settlement as fair, reasonable, and adequate and dismissing the Action with prejudice, with costs and attorneys' fees to be borne by the Party incurring the same.

**"Court"** means the United States District Court for the Southern District of Ohio.

**"Defendant"** means Kestrel Engineering, Inc.

**"Defense Counsel"** means Fiddler & Associates, P.C.

**"Parties"** refers jointly to Plaintiff and Defendant.

**"Payout Amount"** means $10,001.29 for Plaintiff.[1]

**"Plaintiff"** means Robert Hughes.

**"Plaintiff's Counsel"** means Winebrake & Santillo, LLC and Barkan Meizlish, LLP.

**"Released Parties"** means Defendant and any of its owners, governing persons, parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or other persons or entities acting on Defendant's behalf.

**"Settlement"** means the terms and conditions described in this Agreement.

**2. Maximum Settlement Amount.** Defendant's total payment under this Settlement will not under any circumstances exceed $20,002.58 plus any employer-side payroll taxes and withholdings (such as, for example, the employer's share of FICA) associated with the Payout Amounts.

**3. Condition Precedent.** This Settlement is conditioned on passage of the Approval Date.

**4. Release.** Within fourteen (14) days of Plaintiff's execution of this Agreement, Plaintiff will cause his attorneys to file an Approval Motion, with language agreed to by the Parties. Upon passage of the Approval Date and Defendant's fulfillment of its payment obligations under paragraphs 6 and 8, Plaintiff (on behalf of himself and his heirs, spouses, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable claims arising prior to the date Plaintiff executes the Agreement and alleging unpaid wages or overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law

[1] This Payout Amount will be enhanced *pro rata* if: the Court disapproves any portion of Plaintiff's Counsel's requested attorney's fees or expenses as described in paragraph 8.

theory, including, but not limited to, any and all negligence and tort claims, contract claims, promissory estoppel claims, intentional infliction of emotional distress claims, defamation claims, wrongful discharge claims, claims for wages, qui tam claims, claims for benefits, and claims arising pursuant to any law, statute, ordinance, rule, or regulation including, but not limited to, the Federal False Claims Act, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. Section 1981, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, as amended, ("ADEA"), the Older Workers Benefit Protection Act, the Texas Commission on Human Rights Act, as amended ("TCHRA"), the Texas Minimum Wage Act, the Texas Whistleblowers Act, the Texas Worker's' Compensation Act (including retaliation and other claims under Chapter 451 of the Texas Labor Code (formerly Article 8307c of the Texas Workers' Compensation Act), the Texas Labor Code, the Texas Health and Safety Code, the Rehabilitation Act, the Employee Retirement Income Security Act ("ERISA"), the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Family and Medical Leave Act ("FMLA"). This release includes all claims that were asserted in or are reasonably related to the Action, including, but not limited to, any claims for unpaid overtime, liquidated damages, costs, and attorneys' fees pursuant to the FLSA.

**5. OWBPA.** This Agreement is intended to satisfy the requirements of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f). Plaintiff is advised to consult with his attorney before executing this Agreement. Plaintiff acknowledges and agrees that (a) Plaintiff has read and understands the terms of this Agreement; (b) by signing this Agreement, Plaintiff acknowledges that he does so freely, knowingly, and voluntarily (c) Plaintiff is not releasing any claims that may arise after the date of this Agreement; (d) Plaintiff is waiving his rights or claims in exchange for consideration in addition to anything of value to which Plaintiff is already

entitled; and (e) Plaintiff has been given twenty-one (21) days to consider this Agreement or has chosen to waive that period of time to review and consider this Agreement. Plaintiff is waiving any and all rights or claims which Plaintiff may have for age discrimination under the Age Discrimination in Employment Act and/or the Older Workers Benefit Protection Act or the Texas Commission on Human Rights Act. Plaintiff shall have seven (7) days after signing this Agreement during which time Plaintiff may revoke this Agreement (the "Revocation Period") in writing if the writing is received by Defendant's attorney, G. Scott Fiddler, at Fiddler & Associates, P.C., 1004 Congress, 3rd Floor, Houston, Texas 77002, fax number, 713-228-0078, before the expiration of the Revocation Period. This Agreement will not become effective (the "Effective Date") until the Revocation Period expires, during which time Plaintiff has not revoked this Agreement in writing received by Defendant's attorney, G. Scott Fiddler, at Fiddler & Associates, P.C., 1004 Congress, 3rd Floor, Houston, Texas 77002, fax number, 713-228-0078, before the expiration of the Revocation Period.

**6. Payment to Plaintiff.** Within fourteen (14) days of the Approval Date, Defendant will issue to Plaintiff who has signed this Agreement and returned a completed IRS W-4 Form a payroll check in the gross amount of $10,001.29, from which Defendant will withhold all applicable federal, state, and local taxes and withholdings ordinarily borne by employees pursuant to Defendant's ordinary payroll practices. Defendant will promptly deliver this payroll check to Plaintiff's Counsel for distribution to Plaintiff. Defendant also will issue to Plaintiff an IRS W-2 Form reflecting his Payout Amount. This IRS W-2 Forms will be mailed directly from Defendant to Plaintiff at the address listed on his W-4 Form. If the payroll check remains uncashed 120 days after the Approval Date, Defendant may issue a stop payment on the check and retain all associated funds and need not mail a W-2 Form to Plaintiff. Defendant and

its agents and attorneys make no representations or warranties as to the tax treatment of this Payout Amount by any taxing authorities. Plaintiff agrees to indemnify and hold harmless Released Parties for any taxes, penalties, and interest that may be assessed against Released Parties attributable to the Payout Amount for any taxes owed by Plaintiff.

7. **No Re-employment.** As part of this Agreement and as further consideration connected herewith, Plaintiff agrees that he is relinquishing, releasing, and/or waiving any and all employment rights or opportunities with Defendant and/or Released Parties and that he will not apply for or accept employment with them in the future. This paragraph applies to all business operations and locations of Released Parties, and to all positions with Released Parties.

8. **Payment of Plaintiff's Counsel's Fees and Expenses.** Plaintiff's Counsel will seek (and Defendant will not oppose) Court approval of fees and expenses associated with the settlement of Plaintiff's claims of $10,001.29. This amount is addition to the Payout Amount to Plaintiff described in paragraph 6. The Settlement is ***not*** contingent upon the Court's approval of this amount. Within seven (7) days of the Approval Date, Plaintiff's Counsel will email or fax a completed Form W-9 to Defendant's Counsel. Within fourteen (14) days of the Approval Date, Defendant will mail to Plaintiff's Counsel a non-payroll check made payable to Winebrake & Santillo, LLC and equaling any Court-approved fees and expenses. Defendant will issue to Winebrake & Santillo, LLC an IRS 1099 Form reflecting this payment. Plaintiff's Counsel is solely responsible for the payment of any taxes associated with this payment.

9. **Confidentiality.** Plaintiff will not communicate or disclose the terms of this Agreement, or the circumstances leading up to this Agreement, to any persons other than his spouse, significant other, immediate family member, attorney, accountant and/or tax consultant, or as otherwise required by law. Nothing in this paragraph is intended to prohibit Plaintiff from

disclosing that this matter has been resolved without making reference to the terms of this Agreement. Subject to the foregoing, Plaintiff may disclose the fact that the Action "has ended" or "is over" and that he "may not discuss the matter further." Plaintiff represents that as of the signing of the Agreement, he has not disclosed to anyone other than his spouse, significant other, immediate family member, attorney, accountant and/or tax consultant the existence of the Agreement, the amount of the Payout Amount and the other terms of this Agreement, the circumstances giving rise to the execution of the Agreement, and the negotiations leading to the Agreement. Plaintiff agrees that if a court of appropriate jurisdiction determines that he has breached this confidentiality clause, he will be liable to Defendant for up to $2,500.00 under this Agreement as liquidated damages.

**10. Entire Agreement.** This Agreement embodies the entire agreement between the Parties and controls over any prior communications. In entering into the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

**11. Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' heirs and successors.

**12. No Admissions.** Nothing in this Agreement constitutes an admission or suggestion of liability by any Party. Defendant denies any wrongdoing and continues to assert that, absent this Settlement, they ultimately would prevail in the Action. The Parties agree there are bona fide factual disputes regarding liability, the amount of hours worked, and the amount of wages owed, if any, which may be due Plaintiff.

**13. Court Approval Not Obtained.** If the Court does not approve the Settlement, the Parties' litigation positions will return to the *status quo ante* and, for example, Defendant will not have waived, compromised, or impacted any objections or defenses to Plaintiffs' claims or

the propriety of collective litigation.

14. **Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

15. **Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

16. **Applicable Law.** This Agreement is governed and construed pursuant to Ohio law.

17. **Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approval by the Court.

18. **Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

Robert T. Hughes
Robert Hughes

8-10-16
Date

______________________________
For Kestrel Engineering, Inc.

______________
Date

______________________________
Title

the propriety of collective litigation.

**14. Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

**15. Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

**16. Applicable Law.** This Agreement is governed and construed pursuant to Ohio law.

**17. Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approval by the Court.

**18. Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

______________________________ ______________
Robert Hughes Date

______________________________ 8-10-16
For Kestrel Engineering, Inc. Date

PRESIDENT
Title

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE JOHNSON, *et al.* | : | 2:15-cv-02575-EAS-EPD |
| v. | : | |
| KESTREL ENGINEERING, INC. | : | |

**SETTLEMENT AGREEMENT AND RELEASE**

Plaintiff (as defined below) and Defendant (as defined below) STIPULATE and AGREE as follows:

**1. Definitions.** The following terms will have the following meanings:

**"Action"** means the above-captioned lawsuit.

**"Agreement"** means this "Settlement Agreement and Release."

**"Approval Date"** means the date on which the Court enters an order approving the Settlement as fair, reasonable, and adequate and dismissing the Action with prejudice, with costs and attorneys' fees to be borne by the Party incurring the same.

**"Approval Motion"** means the motion to be filed by Plaintiff's Counsel attaching a copy of the Agreement and requesting that the Court enter an order approving the Settlement as fair, reasonable, and adequate and dismissing the Action with prejudice, with costs and attorneys' fees to be borne by the Party incurring the same.

**"Court"** means the United States District Court for the Southern District of Ohio.

**"Defendant"** means Kestrel Engineering, Inc.

**"Defense Counsel"** means Fiddler & Associates, P.C.

**"Parties"** refers jointly to Plaintiff and Defendant.

**"Payout Amount"** means $17,181.70 for Plaintiff.[1]

**"Plaintiff"** means Randall Deem.

**"Plaintiff's Counsel"** means Winebrake & Santillo, LLC and Barkan Meizlish, LLP.

**"Released Parties"** means Defendant and any of its owners, governing persons, parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or other persons or entities acting on Defendant's behalf.

**"Settlement"** means the terms and conditions described in this Agreement.

**2. Maximum Settlement Amount.** Defendant's total payment under this Settlement will not under any circumstances exceed $34,363.40 plus any employer-side payroll taxes and withholdings (such as, for example, the employer's share of FICA) associated with the Payout Amounts.

**3. Condition Precedent.** This Settlement is conditioned on passage of the Approval Date.

**4. Release.** Within fourteen (14) days of Plaintiff's execution of this Agreement, Plaintiff will cause his attorneys to file an Approval Motion, with language agreed to by the Parties. Upon passage of the Approval Date and Defendant's fulfillment of its payment obligations under paragraphs 6 and 8, Plaintiff (on behalf of himself and his heirs, spouses, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable claims arising prior to the date Plaintiff executes the Agreement and alleging unpaid wages or overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law

[1] This Payout Amount will be enhanced *pro rata* if: the Court disapproves any portion of Plaintiff's Counsel's requested attorney's fees or expenses as described in paragraph 8.

theory, including, but not limited to, any and all negligence and tort claims, contract claims, promissory estoppel claims, intentional infliction of emotional distress claims, defamation claims, wrongful discharge claims, claims for wages, qui tam claims, claims for benefits, and claims arising pursuant to any law, statute, ordinance, rule, or regulation including, but not limited to, the Federal False Claims Act, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. Section 1981, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, as amended, ("ADEA"), the Older Workers Benefit Protection Act, the Texas Commission on Human Rights Act, as amended ("TCHRA"), the Texas Minimum Wage Act, the Texas Whistleblowers Act, the Texas Worker's' Compensation Act (including retaliation and other claims under Chapter 451 of the Texas Labor Code (formerly Article 8307c of the Texas Workers' Compensation Act), the Texas Labor Code, the Texas Health and Safety Code, the Rehabilitation Act, the Employee Retirement Income Security Act ("ERISA"), the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Family and Medical Leave Act ("FMLA"). This release includes all claims that were asserted in or are reasonably related to the Action, including, but not limited to, any claims for unpaid overtime, liquidated damages, costs, and attorneys' fees pursuant to the FLSA.

5. **OWBPA.** This Agreement is intended to satisfy the requirements of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f). Plaintiff is advised to consult with his attorney before executing this Agreement. Plaintiff acknowledges and agrees that (a) Plaintiff has read and understands the terms of this Agreement; (b) by signing this Agreement, Plaintiff acknowledges that he does so freely, knowingly, and voluntarily (c) Plaintiff is not releasing any claims that may arise after the date of this Agreement; (d) Plaintiff is waiving his rights or claims in exchange for consideration in addition to anything of value to which Plaintiff is already

entitled; and (e) Plaintiff has been given twenty-one (21) days to consider this Agreement or has chosen to waive that period of time to review and consider this Agreement. Plaintiff is waiving any and all rights or claims which Plaintiff may have for age discrimination under the Age Discrimination in Employment Act and/or the Older Workers Benefit Protection Act or the Texas Commission on Human Rights Act. Plaintiff shall have seven (7) days after signing this Agreement during which time Plaintiff may revoke this Agreement (the "Revocation Period") in writing if the writing is received by Defendant's attorney, G. Scott Fiddler, at Fiddler & Associates, P.C., 1004 Congress, 3rd Floor, Houston, Texas 77002, fax number, 713-228-0078, before the expiration of the Revocation Period. This Agreement will not become effective (the "Effective Date") until the Revocation Period expires, during which time Plaintiff has not revoked this Agreement in writing received by Defendant's attorney, G. Scott Fiddler, at Fiddler & Associates, P.C., 1004 Congress, 3rd Floor, Houston, Texas 77002, fax number, 713-228-0078, before the expiration of the Revocation Period.

**6. Payment to Plaintiff.** Within fourteen (14) days of the Approval Date, Defendant will issue to Plaintiff who has signed this Agreement and returned a completed IRS W-4 Form a payroll check in the gross amount of $17,181.70, from which Defendant will withhold all applicable federal, state, and local taxes and withholdings ordinarily borne by employees pursuant to Defendant's ordinary payroll practices. Defendant will promptly deliver this payroll check to Plaintiff's Counsel for distribution to Plaintiff. Defendant also will issue to Plaintiff an IRS W-2 Form reflecting his Payout Amount. This IRS W-2 Forms will be mailed directly from Defendant to Plaintiff at the address listed on his W-4 Form. If the payroll check remains uncashed 120 days after the Approval Date, Defendant may issue a stop payment on the check and retain all associated funds and need not mail a W-2 Form to Plaintiff. Defendant and

its agents and attorneys make no representations or warranties as to the tax treatment of this Payout Amount by any taxing authorities. Plaintiff agrees to indemnify and hold harmless Released Parties for any taxes, penalties, and interest that may be assessed against Released Parties attributable to the Payout Amount for any taxes owed by Plaintiff.

7. **No Re-employment.** As part of this Agreement and as further consideration connected herewith, Plaintiff agrees that he is relinquishing, releasing, and/or waiving any and all employment rights or opportunities with Defendant and/or Released Parties and that he will not apply for or accept employment with them in the future. This paragraph applies to all business operations and locations of Released Parties, and to all positions with Released Parties.

8. **Payment of Plaintiff's Counsel's Fees and Expenses.** Plaintiff's Counsel will seek (and Defendant will not oppose) Court approval of fees and expenses associated with the settlement of Plaintiff's claims of $17,181.70. This amount is addition to the Payout Amount to Plaintiff described in paragraph 6. The Settlement is ***not*** contingent upon the Court's approval of this amount. Within seven (7) days of the Approval Date, Plaintiff's Counsel will email or fax a completed Form W-9 to Defendant's Counsel. Within fourteen (14) days of the Approval Date, Defendant will mail to Plaintiff's Counsel a non-payroll check made payable to Winebrake & Santillo, LLC and equaling any Court-approved fees and expenses. Defendant will issue to Winebrake & Santillo, LLC an IRS 1099 Form reflecting this payment. Plaintiff's Counsel is solely responsible for the payment of any taxes associated with this payment.

9. **Confidentiality.** Plaintiff will not communicate or disclose the terms of this Agreement, or the circumstances leading up to this Agreement, to any persons other than his spouse, significant other, immediate family member, attorney, accountant and/or tax consultant, or as otherwise required by law. Nothing in this paragraph is intended to prohibit Plaintiff from

disclosing that this matter has been resolved without making reference to the terms of this Agreement. Subject to the foregoing, Plaintiff may disclose the fact that the Action "has ended" or "is over" and that he "may not discuss the matter further." Plaintiff represents that as of the signing of the Agreement, he has not disclosed to anyone other than his spouse, significant other, immediate family member, attorney, accountant and/or tax consultant the existence of the Agreement, the amount of the Payout Amount and the other terms of this Agreement, the circumstances giving rise to the execution of the Agreement, and the negotiations leading to the Agreement. Plaintiff agrees that if a court of appropriate jurisdiction determines that he has breached this confidentiality clause, he will be liable to Defendant for up to $2,500.00 under this Agreement as liquidated damages.

**10. Entire Agreement.** This Agreement embodies the entire agreement between the Parties and controls over any prior communications. In entering into the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

**11. Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' heirs and successors.

**12. No Admissions.** Nothing in this Agreement constitutes an admission or suggestion of liability by any Party. Defendant denies any wrongdoing and continues to assert that, absent this Settlement, they ultimately would prevail in the Action. The Parties agree there are bona fide factual disputes regarding liability, the amount of hours worked, and the amount of wages owed, if any, which may be due Plaintiff.

**13. Court Approval Not Obtained.** If the Court does not approve the Settlement, the Parties' litigation positions will return to the *status quo ante* and, for example, Defendant will not have waived, compromised, or impacted any objections or defenses to Plaintiffs' claims or

the propriety of collective litigation.

14. **Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

15. **Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

16. **Applicable Law.** This Agreement is governed and construed pursuant to Ohio law.

17. **Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approval by the Court.

18. **Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

Randall W. Deem ______________________ 8-8-16 ______________
Randall Deem Date

______________________ ______________
For Kestrel Engineering, Inc. Date

______________________
Title

the propriety of collective litigation.

**14. Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

**15. Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

**16. Applicable Law.** This Agreement is governed and construed pursuant to Ohio law.

**17. Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approval by the Court.

**18. Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

| | |
|---|---|
| ______________________ | ______________ |
| Randall Deem | Date |
| [signature] | 8-10-16 |
| For Kestrel Engineering, Inc. | Date |
| PRESIDENT | |
| Title | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GEORGE JOHNSON, *et al.*<br><br>v.<br><br>KESTREL ENGINEERING, INC. | 2:15-cv-02575-EAS-EPD |

**SETTLEMENT AGREEMENT AND RELEASE**

Plaintiff (as defined below) and Defendant (as defined below) STIPULATE and AGREE as follows:

**1. Definitions.** The following terms will have the following meanings:

**"Action"** means the above-captioned lawsuit.

**"Agreement"** means this "Settlement Agreement and Release."

**"Approval Date"** means the date on which the Court enters an order approving the Settlement as fair, reasonable, and adequate and dismissing the Action with prejudice, with costs and attorneys' fees to be borne by the Party incurring the same.

**"Approval Motion"** means the motion to be filed by Plaintiff's Counsel attaching a copy of the Agreement and requesting that the Court enter an order approving the Settlement as fair, reasonable, and adequate and dismissing the Action with prejudice, with costs and attorneys' fees to be borne by the Party incurring the same.

**"Court"** means the United States District Court for the Southern District of Ohio.

**"Defendant"** means Kestrel Engineering, Inc.

**"Defense Counsel"** means Fiddler & Associates, P.C.

**"Parties"** refers jointly to Plaintiff and Defendant.

**"Payout Amount"** means $8,462.63 for Plaintiff.[1]

**"Plaintiff"** means Glenn Brochard.

**"Plaintiff's Counsel"** means Winebrake & Santillo, LLC and Barkan Meizlish, LLP.

**"Released Parties"** means Defendant and any of its owners, governing persons, parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or other persons or entities acting on Defendant's behalf.

**"Settlement"** means the terms and conditions described in this Agreement.

2. **Maximum Settlement Amount.** Defendant's total payment under this Settlement will not under any circumstances exceed $16,925.26 plus any employer-side payroll taxes and withholdings (such as, for example, the employer's share of FICA) associated with the Payout Amounts.

3. **Condition Precedent.** This Settlement is conditioned on passage of the Approval Date.

4. **Release.** Within fourteen (14) days of Plaintiff's execution of this Agreement, Plaintiff will cause his attorneys to file an Approval Motion, with language agreed to by the Parties. Upon passage of the Approval Date and Defendant's fulfillment of its payment obligations under paragraphs 6 and 8, Plaintiff (on behalf of himself and his heirs, spouses, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable claims arising prior to the date Plaintiff executes the Agreement and alleging unpaid wages or overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law

[1] This Payout Amount will be enhanced *pro rata* if: the Court disapproves any portion of Plaintiff's Counsel's requested attorney's fees or expenses as described in pargraph 8.

theory, including, but not limited to, any and all negligence and tort claims, contract claims, promissory estoppel claims, intentional infliction of emotional distress claims, defamation claims, wrongful discharge claims, claims for wages, qui tam claims, claims for benefits, and claims arising pursuant to any law, statute, ordinance, rule, or regulation including, but not limited to, the Federal False Claims Act, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. Section 1981, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, as amended, ("ADEA"), the Older Workers Benefit Protection Act, the Texas Commission on Human Rights Act, as amended ("TCHRA"), the Texas Minimum Wage Act, the Texas Whistleblowers Act, the Texas Worker's' Compensation Act (including retaliation and other claims under Chapter 451 of the Texas Labor Code (formerly Article 8307c of the Texas Workers' Compensation Act), the Texas Labor Code, the Texas Health and Safety Code, the Rehabilitation Act, the Employee Retirement Income Security Act ("ERISA"), the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Family and Medical Leave Act ("FMLA"). This release includes all claims that were asserted in or are reasonably related to the Action, including, but not limited to, any claims for unpaid overtime, liquidated damages, costs, and attorneys' fees pursuant to the FLSA.

5. **OWBPA.** This Agreement is intended to satisfy the requirements of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f). Plaintiff is advised to consult with his attorney before executing this Agreement. Plaintiff acknowledges and agrees that (a) Plaintiff has read and understands the terms of this Agreement; (b) by signing this Agreement, Plaintiff acknowledges that he does so freely, knowingly, and voluntarily (c) Plaintiff is not releasing any claims that may arise after the date of this Agreement; (d) Plaintiff is waiving his rights or claims in exchange for consideration in addition to anything of value to which Plaintiff is already

entitled; and (e) Plaintiff has been given twenty-one (21) days to consider this Agreement or has chosen to waive that period of time to review and consider this Agreement. Plaintiff is waiving any and all rights or claims which Plaintiff may have for age discrimination under the Age Discrimination in Employment Act and/or the Older Workers Benefit Protection Act or the Texas Commission on Human Rights Act. Plaintiff shall have seven (7) days after signing this Agreement during which time Plaintiff may revoke this Agreement (the "Revocation Period") in writing if the writing is received by Defendant's attorney, G. Scott Fiddler, at Fiddler & Associates, P.C., 1004 Congress, 3rd Floor, Houston, Texas 77002, fax number, 713-228-0078, before the expiration of the Revocation Period. This Agreement will not become effective (the "Effective Date") until the Revocation Period expires, during which time Plaintiff has not revoked this Agreement in writing received by Defendant's attorney, G. Scott Fiddler, at Fiddler & Associates, P.C., 1004 Congress, 3rd Floor, Houston, Texas 77002, fax number, 713-228-0078, before the expiration of the Revocation Period.

**6. Payment to Plaintiff.** Within fourteen (14) days of the Approval Date, Defendant will issue to Plaintiff who has signed this Agreement and returned a completed IRS W-4 Form a payroll check in the gross amount of $8,462.63, from which Defendant will withhold all applicable federal, state, and local taxes and withholdings ordinarily borne by employees pursuant to Defendant's ordinary payroll practices. Defendant will promptly deliver this payroll check to Plaintiff's Counsel for distribution to Plaintiff. Defendant also will issue to Plaintiff an IRS W-2 Form reflecting his Payout Amount. This IRS W-2 Forms will be mailed directly from Defendant to Plaintiff at the address listed on his W-4 Form. If the payroll check remains uncashed 120 days after the Approval Date, Defendant may issue a stop payment on the check and retain all associated funds and need not mail a W-2 Form to Plaintiff. Defendant and

its agents and attorneys make no representations or warranties as to the tax treatment of this Payout Amount by any taxing authorities. Plaintiff agrees to indemnify and hold harmless Released Parties for any taxes, penalties, and interest that may be assessed against Released Parties attributable to the Payout Amount for any taxes owed by Plaintiff.

7. **No Re-employment.** As part of this Agreement and as further consideration connected herewith, Plaintiff agrees that he is relinquishing, releasing, and/or waiving any and all employment rights or opportunities with Defendant and/or Released Parties and that he will not apply for or accept employment with them in the future. This paragraph applies to all business operations and locations of Released Parties, and to all positions with Released Parties.

8. **Payment of Plaintiff's Counsel's Fees and Expenses.** Plaintiff's Counsel will seek (and Defendant will not oppose) Court approval of fees and expenses associated with the settlement of Plaintiff's claims of $8,462.63. This amount is addition to the Payout Amount to Plaintiff described in paragraph 6. The Settlement is ***not*** contingent upon the Court's approval of this amount. Within seven (7) days of the Approval Date, Plaintiff's Counsel will email or fax a completed Form W-9 to Defendant's Counsel. Within fourteen (14) days of the Approval Date, Defendant will mail to Plaintiff's Counsel a non-payroll check made payable to Winebrake & Santillo, LLC and equaling any Court-approved fees and expenses. Defendant will issue to Winebrake & Santillo, LLC an IRS 1099 Form reflecting this payment. Plaintiff's Counsel is solely responsible for the payment of any taxes associated with this payment.

9. **Confidentiality.** Plaintiff will not communicate or disclose the terms of this Agreement, or the circumstances leading up to this Agreement, to any persons other than his spouse, significant other, immediate family member, attorney, accountant and/or tax consultant, or as otherwise required by law. Nothing in this paragraph is intended to prohibit Plaintiff from

disclosing that this matter has been resolved without making reference to the terms of this Agreement. Subject to the foregoing, Plaintiff may disclose the fact that the Action "has ended" or "is over" and that he "may not discuss the matter further." Plaintiff represents that as of the signing of the Agreement, he has not disclosed to anyone other than his spouse, significant other, immediate family member, attorney, accountant and/or tax consultant the existence of the Agreement, the amount of the Payout Amount and the other terms of this Agreement, the circumstances giving rise to the execution of the Agreement, and the negotiations leading to the Agreement. Plaintiff agrees that if a court of appropriate jurisdiction determines that he has breached this confidentiality clause, he will be liable to Defendant for up to $2,500.00 under this Agreement as liquidated damages.

**10. Entire Agreement.** This Agreement embodies the entire agreement between the Parties and controls over any prior communications. In entering into the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

**11. Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' heirs and successors.

**12. No Admissions.** Nothing in this Agreement constitutes an admission or suggestion of liability by any Party. Defendant denies any wrongdoing and continues to assert that, absent this Settlement, they ultimately would prevail in the Action. The Parties agree there are bona fide factual disputes regarding liability, the amount of hours worked, and the amount of wages owed, if any, which may be due Plaintiff.

**13. Court Approval Not Obtained.** If the Court does not approve the Settlement, the Parties' litigation positions will return to the *status quo ante* and, for example, Defendant will not have waived, compromised, or impacted any objections or defenses to Plaintiffs' claims or

the propriety of collective litigation.

14. **Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

15. **Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

16. **Applicable Law.** This Agreement is governed and construed pursuant to Ohio law.

17. **Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approval by the Court.

18. **Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

Glenn Brochard ______________________ Date 8/8/16

______________________
For Kestrel Engineering, Inc. ______________________ Date

______________________
Title

the propriety of collective litigation.

**14. Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

**15. Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

**16. Applicable Law.** This Agreement is governed and construed pursuant to Ohio law.

**17. Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approval by the Court.

**18. Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

| | |
|---|---|
| Glenn Brochard | Date |
| [signature] For Kestrel Engineering, Inc. | 8-10-16 Date |
| PRESIDENT Title | |